## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT HOSBY, | : | CIVIL NO: 4:13-CV-00407 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| STEVEN GLUNT, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. [1] | : | |

## <u>REPORT AND RECOMMENDATION</u>

The petitioner, Robert Hosby ("Hosby"), an inmate presently confined at

SCI Rockview in Bellefonte, Pennsylvania, filed this *pro se* habeas corpus petition

pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his Dauphin

County, Pennsylvania conviction and sentence for first-degree murder.  Having

---

[1]      Under 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254
Cases in the United States District Courts, the proper respondent in a federal
habeas corpus action is the person having custody over the petitioner.  *See Alleyne
v. Rozum*, No. 4:07-CV-871, 2007 WL 1520093, at *1 (M.D. Pa. May 21, 2007)
(finding that the only proper respondent in a § 2254 habeas corpus petition is the
petitioner's custodial official at the state correctional institution where the
petitioner is confined).  In this case, the proper respondent is Steven Glunt, the
Superintendent at SCI Rockview.  Therefore, neither the Pennsylvania Attorney
General nor the Dauphin County District Attorney's Office is a proper respondent.
*See also Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 462 (3d Cir.
1996) (detailing that if, on remand, the complaint sounds in habeas corpus, and not
civil rights, an assistant district attorney would not be a proper respondent under
Rule 2(a) of the Rules Governing Section 2254 Cases).

reviewed Hosby's petition, along with the parties' respective arguments and exhibits, we recommend that Hosby's petition be denied.

## I. Background and Procedural History.

The Superior Court of Pennsylvania aptly summarized the facts leading to Hosby's arrest as follows:

> While drinking at a local bar, [Hosby] and his cousin, Tamara Hosby, encountered Tara Layton and her friends and arranged for Tamara to fight Soraya Layton, Tara's cousin. The fight was arranged because Soraya provided the Harrisburg Police Department with information related to criminal activity involving Tamara's brother. During the early morning hours of October 8, 2006, [Hosby] drove Tamara to Tara's residence at 2118 Susquehanna Street to engage in the pre-arranged fist fight with Soraya.

> When [Hosby] and Tamara arrived at the location, they exited the vehicle and walked together along the sidewalk towards Tara's residence, and Tamara shouted at Soraya as she approached the residence. Soraya turned around to walk away; however, Tamara grabbed her hair and punched her in the face, leading to the physical altercation. [Hosby] urged Tamara to "beat Soraya up" as the fight was occurring.

> Anthony Chadwick, Tara's boyfriend, broke up the fight between Soraya and Tamara and they walked away from the residence still arguing. Around the same time, [Hosby] and Tara were arguing about the winner of the altercation between Soraya and Tamara. [Hosby] punched Tara in the face, and Anthony intervened and pushed [Hosby] away. [Hosby] then turned away and walked to his car.

> Witnesses testified that once [Hosby] arrived at his vehicle, he opened the door and reached inside, pulled out a gun and placed it in his rear pocket. After witnessing [Hosby] loading the gun and placing it in his rear pocket, Tara's cousin, Laticia Jackson,

> instructed him to leave.  He ignored the demand and walked
> towards Tara's residence, intoning, "They keep running their
> mouth." When [Hosby] approached the residence, Tara grabbed
> a plastic lawn chair and ran towards him.  As she was shouting
> for him to leave, she hit [Hosby] a few times with the chair and
> pieces of the chair went flying. [Hosby] backed away, pulled out
> his gun and shot Tara in the chest, killing her instantly. After
> shooting Tara, [Hosby] turned away, returned to his car and left
> with Tamara.

*Doc.* 12-6 at 24-25.

Hosby was later arrested and processed by the City of Harrisburg, Bureau of

Police.  *Doc.* 12-5 at 4.  Following his arrest, Hosby proceeded to a jury trial in

Dauphin County, Pennsylvania on charges of first-degree murder, aggravated

assault, retaliation against a witness or victim, criminal conspiracy aiding-

retaliation against a witness or victim, criminal conspiracy aiding-simple assault,

unlawful possession of a firearm, unlawfully firing a weapon within city limits,

carrying a firearm without a license, tampering with/fabricating physical evidence,

and recklessly endangering another person.  *Doc.* 12-4 at 5.  On October 11, 2007,

a jury convicted Hosby of first-degree murder, criminal conspiracy, recklessly

endangering another person, firearms possession, carrying a firearm without a

license, and unlawfully firing a weapon within city limits.    *Id.* at 5-6.   On

December 19, 2007, Hosby was sentenced to life imprisonment. *Id.* at 9.  Hosby,

thereafter, directly appealed his conviction and sentence to the Superior Court of

Pennsylvania and presented the following issues for consideration:

3

1. Whether the evidence presented at trial was sufficient to prove the appellant committed voluntary manslaughter rather than first[-]degree murder;

2. Whether the evidence presented at trial was insufficient to prove beyond a reasonable doubt criminal conspiracy to commit simple assault;

3. Whether the evidence presented at trial was insufficient to prove beyond a reasonable doubt reckless endangerment of other persons (Soraya Layton and/or Latisha Jackson);

4. Whether the trial court erred in denying the appellant's motion for new [sic] trial and in arrest of judgments because the jury's verdicts were against the weight of the evidence presented; and

5. Whether the trial court erred in refusing to instruct the jury that lack of any injuries on the petitioner does not negate serious provocation on a voluntary manslaughter instruction.

*Doc.* 12-5 at 4-5. On December 17, 2008, the Superior Court of Pennsylvania affirmed the trial court's judgment of sentence, and on May 27, 2009, the Pennsylvania Supreme Court denied Hosby's petition for allowance of appeal on the same issues. *Id.* at 18, 26, 49. Furthermore, there is nothing in the record to reflect that Hosby filed a petition for *certiorari* in the United States Supreme Court on direct appeal.

On August 26, 2009, Hosby subsequently filed a *pro-se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). *See Doc*. 12-5 at 51. In his PCRA petition, Hosby presented the following:

> Counsel was ineffective for failing to investigate, failing to [move] for a change of venue, for inducing me into not taking the witness stan[d] on my behalf, and for not presenting evidence for my defence [sic] that was known to him.   Ineffective assistance of counsel for failing to request a jury instruction on self-defense.   failure [sic] to object to the in-proper [sic] jury instructions.

*Id.* at 53.[2]   On April 19, 2010, Hosby's court-appointed PCRA counsel filed a motion to withdraw.   *Doc.* 12-5 at 71, 73.   After reviewing PCRA counsel's motion to withdraw, the Dauphin County Court of Common Pleas dismissed Hosby's PCRA petition on December 7, 2011, and on December 14, 2012, the Superior Court of Pennsylvania affirmed.   *See Doc.* 12-6 at 24-35.   Hosby did not file a petition for allowance of appeal in the Supreme Court of Pennsylvania, and there is nothing in the record to reflect that Hosby sought further appellate review on his PCRA petition.

On February 15, 2013, Hosby filed this 28 U.S.C. § 2254 petition for habeas corpus relief, arguing that his trial counsel was constitutionally ineffective for not objecting to a portion of the trial court's jury instruction on the element of intent for first-degree murder; an instruction, which Hosby contends, violated his right to due process, as provided by the Fourteenth Amendment, in that the instruction impermissibly relieved the Commonwealth of its burden of proof beyond a

---

[2]   The last issue that Hosby presented for consideration in his PCRA petition, regarding trial counsel's failure to object to an improper jury instruction, related to the instruction on voluntary manslaughter, and it did not relate to the issue presented in this federal action.

reasonable doubt as to each and every element of the crime.  *See Doc.* 1 at 5.  More precisely, Hosby contends that the relevant portion of the jury instruction imposed an unlawful mandatory presumption on the jury.[3]  *See id.*

After Hosby filed his habeas corpus petition, we conducted a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases.   Rather than recommending dismissal, we ordered Hosby to fill out an election form, pursuant to the Third Circuit's mandate in *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000).  *Doc.* 4.  Hosby timely responded to our Order and elected to have the Court rule on his 28 U.S.C. § 2254 petition as filed.   *Doc.* 6.   Pursuant to our Order, the respondent then filed an answer to the petition, along with a memorandum of law and related exhibits.   According to the respondent, Hosby's claim is procedurally defaulted and otherwise meritless.  *Doc.* 12-2 at 3.  On June 13, 2013, Hosby filed a reply to the respondent's petition.   *Doc.* 12-13.   Accordingly, Hosby's § 2254 habeas corpus petition is now ripe for review.

---

[3]     To the extent Hosby is attempting to raise a standalone, substantive claim that his PCRA counsel was ineffective for not raising this issue in the PCRA petition, said claim should be outright denied.   Despite recently adding wrinkles to the procedural default analysis in *Martinez v. Ryan*, *infra*, the Supreme Court has continued to maintain that petitioners have no constitutional right to effective assistance of counsel in post-conviction proceedings. *See* 132 S.Ct. 1309, 1315 (2012) (declining to hold that there is a constitutional right to counsel in initial-review collateral proceedings).  At the same time, to the extent that it is applicable, we will consider the claim in connection with Hosby's attempt to overcome the procedural default, which is to be discussed, *infra*.

## II. **Legal Standard.**

The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law, and a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 is the proper mechanism for a State prisoner to challenge the "fact or duration" of his confinement on the ground that he or she is in custody, in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104, 114 (3d Cir. 1997).  Thus, "it is not the province of a federal habeas court to reexamine [S]tate-court determinations on state-law questions." *McGuire*, 502 U.S. at 67-68.

Further, given the supreme nature of the Writ, federal courts reviewing habeas corpus petitions must be vigilant and independent, a commitment that normally entails substantial judicial resources.  To accomplish this great task, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction … are guided by [certain] rules designed to ensure that [S]tate-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012).

Among the rules guiding federal habeas courts relevant to this case, state prisoners must first exhaust available State court remedies before seeking relief.[4] 28 U.S.C. §§ 2254(b)-(c); *see also Cone v. Bell*, 556 U.S. 449 (2009); *Rose v. Lundy*, 455 U.S. 509, 515–20 (1982); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993); *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986).  This general rule promotes the interests of comity and finality by providing State courts with the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  The petitioner bears the burden of demonstrating that he or she has satisfied the exhaustion requirement.  *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

In order for a claim to be considered exhausted, the claim must have been fairly presented to the State courts through "one complete round of the State's established appellate review process." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007) (internal citations and quotation marks omitted).  To be fairly presented, a

---

[4]   Exceptions to the exhaustion requirement are made when: (1) the state corrective process is so deficient as to render any effort to obtain relief futile, 28 U.S.C. § 2254(b); (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner, *Mayberry v. Petsock*, 821 F.2d 179, 184 (3d Cir. 1987); or (3) "inordinate delay" in state proceedings has rendered state remedies ineffective. *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994); *Schandelmeier v. Cunningham*, 819 F.2d 52, 55 (3d Cir. 1986).

petitioner need only "describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the State courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Alongsi v. Ricci*, 367 F. App'x 341, 345 (3d Cir. 2010) (quoting *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal citations and quotation marks omitted)).

Absent a demonstration of exhaustion, a federal court must dismiss without prejudice habeas petitions that contain any unexhausted claims. *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004). Simply stated, an unexhausted claim is one where the habeas petitioner has not "present[ed] the [S]tate courts with the claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971).

Nevertheless, for claims that were not fairly presented to a State court, but for which "further [S]tate-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted, and federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of

justice' to excuse [the] default." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).

To demonstrate "cause" for a procedural default, the petitioner must show that "'some objective factor external to the defense ... impeded [his or her] ... efforts to comply with the ... [state] procedural rule.'" *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (quoting *Slutzker*, 393 F.3d at 381); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). By way of example, showing that a factual or legal basis for a claim was not reasonably available to counsel or showing interference by government officials sufficient to make compliance impracticable, would constitute acceptable "cause" for federal habeas review of the defaulted claim. *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (citing *Murray*, 477 U.S. at 488). A claim of ineffective assistance of counsel has been deemed by the Supreme Court to fall within this standard. *Id.* The exhaustion doctrine generally requires, however, that an ineffective-assistance claim "be presented to the [S]tate courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* (citing *Murray* at 488-89). Regarding the prejudice requirement needed to overcome a procedural default, the habeas petitioner must prove "not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494.

10

As stated, a federal court may also excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

More recently, the United States Supreme Court added a wrinkle to the procedural default analysis. In *Martinez v. Ryan*, state prisoners were expressly prohibited from raising ineffective-assistance-of-trial-counsel claims on direct appeal in the Arizona state courts, and the Supreme Court held "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S.Ct. at 1320. What the Supreme Court termed "initial-review collateral proceedings" are collateral proceedings that "provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* Thus, the Court created a narrow exception to the rule set forth in *Coleman*, 501 U.S. at 753–54, that an attorney's errors in a postconviction collateral proceeding do not constitute cause to

excuse a procedural default. *Martinez*, 132 S.Ct. at 1315. The Court declined to hold, however, that there is a constitutional right to counsel in initial-review collateral proceedings. *Id.* The Court further summarized two situations in which its holding is applicable:

> The first is where the [S]tate courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 1318.

In 2013, the Supreme Court then decided *Trevino v. Thaler*. In *Trevino*, state prisoners in Texas were precluded, as a matter of course, from raising ineffective-assistance-of-trial counsel claims on direct appeal. In finding no significant differences between the Texas and Arizona systems, the Supreme Court extended the *Martinez* holding to states maintaining a procedural framework, where, by reason of design and operation, it is highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. 133 S.Ct. 1911, 1921 (2013).

While Pennsylvania requires, "as a general rule, [that] a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review," *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), the

Commonwealth recognizes two limited, narrow, and practically undeveloped exceptions to the general rule that fall within the discretion of the trial judge. *See Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013). In light of the two exceptions, it would appear that the *Martinez* holding would not be explicitly applicable to Pennsylvania petitioners, because there is, in effect, no express ban on the ability of a petitioner to raise an ineffective-assistance-of-trial-counsel claim on direct appeal. *Trevino*, however, appears to ensure that the *Martinez* holding is applicable to Pennsylvania petitioners, and it will be applied herein, where applicable.

Thus, in short, to overcome a procedural default pursuant to *Martinez*, a prisoner must show that he or she was not appointed counsel on initial-review collateral proceedings or that his or her appointed counsel was ineffective. In addition, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. 1318; *accord id.* at 1319 (providing that an ineffective-assistance-of-trial-counsel claim is *insubstantial* when "it does not have any merit or [when] it is wholly without factual support...."). Moreover, the Court in *Martinez* noted that the substantiality requirement is akin to the certificate-of-appealability standard. *Id.* at 1318-20. Under that standard, a "petitioner must 'sho[w] that reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cochrell*, 537 U.S. 322, 336 (2003).

## III. <u>Discussion</u>.

As mentioned, Hosby's sole ground is that his trial counsel was constitutionally ineffective for not objecting to a portion of the trial court's jury instruction on the element of intent for first-degree murder; an instruction which, Hosby contends, violated his right to due process, as provided by the Fourteenth Amendment, in that the instruction impermissibly relieved the Commonwealth of its burden of proof on the intent element. More precisely, Hosby contends that the relevant portion of the jury instruction created a mandatory presumption of intent. *Doc.* 1 at 5; *Doc.* 8 at 2.

Prior to reaching this Court, however, Hosby never "fairly presented" this ground for relief to the Pennsylvania courts. Indeed, Hosby concedes as much in his memorandum of law, filed in support of his federal petition. *See Doc.* 8 at 4-5. Thus, Hosby has failed to exhaust the sole ground contained his federal habeas petition.

Moreover, it would be futile to require Hosby to exhaust this ground for relief since he is clearly foreclosed from doing so under the PCRA. *See Lambert v. Blackwell*, 387 F.3d 210, 229 (3d Cir. 2004) (explaining that "[t]he PCRA requires petitions to be filed 'within one year of the date the judgment becomes final'…") (quoting 42 Pa. Cons. Stat. 9545(b)); *see Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. Feb. 18, 2014) ("A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that judgment of sentence becomes final.") (quoting 42 Pa. Con. Stat. Ann. § 9545(b)(1)).[5]   Accordingly, the exhaustion requirement should be excused for Hosby on the basis of futility. *See Wenger*, 266 F.3d at 223 (3d Cir. 2001) (citation omitted) (explaining that under circumstances where the petitioner's claim has not been "fairly presented" to the State courts, "but further [S]tate-court review is clearly foreclosed under state law, [then] exhaustion is excused on the ground of futility").   Consequently, Hosby's ground is also procedurally defaulted. *See Coleman*, 501 U.S. at 732 (citation omitted) ("A habeas petitioner who has defaulted his federal claims in [S]tate court meets the technical requirements for exhaustion; there are no state remedies…'available' to him."); *Lines*, 208 F.3d 166 ("A finding of futility merely eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief.").   Accordingly, unless Hosby

---

[5]     Hosby also does not argue, and we do not find, that any statutory exceptions set forth in § 9545(b)(1), for his failure to timely file a PCRA petition, apply here.

can establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default, this Court is not permitted to evaluate the merits of Hosby's sole ground for relief. *See McCandless*, 172 F.3d at 260; *see Coleman*, 501 U.S. at 750.

In an attempt to overcome the procedural default, Hosby contends that his court-appointed PCRA counsel was ineffective for failing to raise the underlying ineffective-assistance-of-trial-counsel ground in his PCRA petition. *Doc.* 8 at 4-5; *Doc.* 13 at 2. Upon consideration, however, we find that Hosby fails to overcome the procedural default because the underlying ineffective-assistance-of trial-counsel claim is not "substantial," as that term was defined by the *Martinez* Court; as such, we have not appointed him counsel nor held a hearing on the issue.

For Hosby to ultimately prevail on an ineffective-assistance-of-trial-counsel claim, he would be required to establish (1) that trial counsel's performance deficiently "fell below an objective standard of reasonableness," and (2) that this "deficient performance prejudiced [his (i.e., Hosby's)] defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the first prong, Hosby would need to show that "[trial] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him (i.e., Hosby)] by the Sixth Amendment." *Id*. at 687. In evaluating trial counsel's performance under this first prong, we would be required to be "highly deferential" to trial counsel's

16

approach and make "every effort…to eliminate the distorting effects of hindsight, to reconstruct the circumstances of [trial] counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Regarding the second prong, Hosby would need to "show that there is a reasonable probability" that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The Supreme Court has described a "reasonable probability" as one that is "sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*  Moreover, and relevant here, trial counsel cannot be constitutionally ineffective for failing to pursue meritless claims or objections.  *See Williams v. Beard*, 637 F.3d 195, 225 n.23 (3d Cir. 2011); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In finding that Hosby's underlying ineffective-assistance-of-trial-counsel claim is not substantial, we focus on Hosby's assault on the jury instruction. Again, according to Hosby, trial counsel was ineffective for not raising an objection to a portion of the trial court's jury instruction, which Hosby believes relieved the Commonwealth, impermissibly, of its constitutional burden of proof on the element of intent for first-degree murder.   More specifically, Hosby contends that said portion of the jury instruction created a mandatory presumption as to the element of intent and deprived him of Due Process guaranteed by the Fourteenth Amendment.

At the time of Hosby's trial, the Commonwealth was required to prove the following elements beyond a reasonable doubt to sustain a conviction for first-degree murder: "(1) a person was unlawfully killed; (2) the person accused did the killing; and (3) the accused acted with specific intent to kill." *Commonwealth v. Solano*, 906 A.2d 1180, 1184 (Pa. 2006) (citing *Commonwealth v. Spotz*, 759 A.2d 1280, 1283 (2000)). Moreover, an intentional killing was defined as "one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated actions." *Id.* (citing *Commonwealth v. Taylor*, 876 A.2d 916, 922 (2005)).

According to Hosby, the following portion of the trial court's jury instruction on first-degree murder impermissibly relieved the Commonwealth of its burden of proof on the intent element in that it created a mandatory presumption:

> I also want to point out to you that the Defendant here has been charged with the use of a firearm. It's been stipulated that the Defendant did not have a license to carry a firearm. And you may regard that as one item of circumstantial evidence, the fact that he had possession of a firearm. He doesn't dispute he had possession of the firearm.

> *You may, you may [sic] infer from that as one item, that could be one item of circumstantial evidence on whether the Defendant intended to commit the crime of homicide.* All three of these offenses. What weight you attach to it, how convincing that is to you, you're not required to find that. *You may use that, the fact*

*that he was unlicensed to carry that firearm. He had possession of the firearm. You may infer that, lead you to the conclusion that he intended to commit the crime of homicide, which incorporates all three of these charges.*

So, again, [sic] that evidence that he doesn't have a license simply alone isn't enough to prove. You look at all the facts and circumstances. And when I talk about all of these things, malice and specific intent, you don't focus simply on the deadly weapon on a vital part of the body. You look at all the evidence and testimony and all the length, the distance, the trajectory, the testimony, you look at all of that in determining whether there was specific intent and malice, malice just for the third degree. *And, again, this fact that he was unlicensed and carrying a firearm, you may use that to infer he intended to commit the crime of homicide.*

Doc. 12-4 at 41-42;[6] *see also* Doc. 8 at 2-3 (pointing the Court to this portion of the jury instruction on first-degree murder).

The Due Process Clause of the Fourteenth Amendment provides, in part, that no State shall "deprive any person of life, liberty, or property, without due process of law…." U.S. CONST. amend. XIV, § 1.  In the context of a criminal trial, it is well-established that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Francis v. Franklin*, 471 U.S. 307,

---

[6]     *See also*, 18 Pa. C.S. § 6104 ("In the trial of a person for committing or attempting to commit a crime enumerated in Section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.").

313 (1965) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  Consistent with

this "bedrock, 'axiomatic and elementary' [constitutional] principle," *id.* (quoting

*In re Winship*, 397 U.S. at 363), the States are prohibited "from using evidentiary

presumptions in a jury charge that have the effect of relieving the State of its

burden of persuasion beyond a reasonable doubt of every essential element of a

crime."  *Id.* at 313 (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-524 (1979)).

Therefore, as Hosby frames it, the question before this Court is whether the portion

of the jury instruction, *supra*, had the effect of relieving the Commonwealth of its

burden on the critical element of intent, by creating a mandatory presumption of

intent.

In resolving this question, we "must focus initially on the specific language

challenged...."  *Id.* at 315.  Our inquiry does not end there, however, because jury

instructions "'may not be judged in artificial isolation,' but must [also] be

considered in the context of the instructions as a whole and the trial record."

*McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 US. 141, 147 (1973)).  In

doing so, we are to consider "'whether there [was] a reasonable likelihood that the

jury...applied the challenged instruction in a way' that violates [the Due Process

Clause]."  *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)); *accord id.*

at n.4 (disapproving of the prior standard-of-review language requiring courts to

consider how reasonable jurors "could" have or "would" have understood the charge as a whole).

Additionally, according to the Supreme Court, "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Franklin*, 471 U.S. at 314.  The Court has also explained that:

> A mandatory presumption may be either conclusive or rebuttable.  A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption.  A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted.

*Id.* at 314 n.2 (citing *Sandstrom*, 442 U.S. at 517-18).  As mentioned, "[m]andatory presumptions must be measured against the standards of *Winship*…." *Id.* at 314.

In evaluating the specific language challenged by Hosby, we note at the outset that the instructions are not cast in the language of a command, in comparison to the instruction at issue in *Franklin*, 471 U.S. 307.[7]  Instead, the

---

[7]     The petitioner in *Franklin* challenged the following two sentences in the trial court's jury instructions:

> The acts of a person of sound mind and discretion *are presumed* to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion *is presumed* to intend the natural and probable consequences of his acts but the presumption may be rebutted.

*Franklin*, 471 U.S. at 315 (emphasis added).

challenged language at issue in this case simply provided the jurors with a choice to infer intent based upon the stipulated fact that Hosby possessed an unlicensed firearm. Moreover, contrary to the language that was challenged in *Sandstrom*, the challenged language here did not direct the jury to presume the intent element. *See Sandstrom*, 442 U.S. at 517 ("*The law presumes* that a person intends the ordinary consequences of his voluntary acts.") (emphasis in original). Thus, in isolation, we find that the challenged language did not create a mandatory presumption. At most, the challenged language created a permissive inference, suggesting to the jury that it was possible to conclude that Hosby intended to kill the victim through the stipulated fact that Hosby was not licensed to carry a firearm and, in fact, possessed one when the victim was killed. *See Franklin*, 471 U.S. at 314 (defining "permissive inference" as a suggestion to the jury that a possible conclusion can be drawn if the State proved predicate facts, but does not require the jury to draw that conclusion).

A permissive inference, only violates the Due Process Clause "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314-15 (citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 157-163). According to the Superior Court of Pennsylvania, which summarized the evidence adduced at trial, Hosby and his cousin, Tamara Hosby, arranged a fight between Hosby's cousin and Soraya

Layton; a fight arranged solely because Soraya had provided the Harrisburg Police Department with information relating to Tamara's brother. *Doc.* 12-5 at 3. Subsequently, Hosby and his cousin arrived at the location where the fight was to occur. *Id.* Following the fight, Hosby argued with Tara about who had won the fight, and Hosby ended up punching Tara in the face. *Id.* Hosby then proceeded to walk to his car, reach inside, pull out a gun, and place the gun in his rear pocket. *Id.* Rather than leaving when he was asked to do so, Hosby continued walking toward Tara's residence. *Id.* At one point, Hosby and Tara got into another physical altercation. *See id.* at 4. Afterwards, Hosby backed away from the confrontation, pulled out his gun, and shot Tara in the chest, killing her instantly. *Id.* Furthermore, as the trial court instructed the jury, Hosby stipulated that he did not have a license to carry a firearm, and it was undisputed that Hosby possessed a firearm when Tara was killed. Based upon these facts from trial, the permissive inference created by the challenged language did not violate due process for the jury could have rationally concluded that Hosby's unlawful possession of the firearm was, in this instance, partial evidence of his intent to commit first-degree murder. As the Supreme Court of Pennsylvania has also iterated: "Firearms certainly have lawful purposes, but they have unlawful ones as well, the most common of which involve inflicting injury upon others or threatening such injury to accomplish other criminal objectives. Licensure involves disclosure; while non-

licensure suggests the stealth by which many criminal objectives are furthered and achieved." *Commonwealth v. Hall*, 830 A.2d 537, 253-54 (Pa. 2003) (citation omitted).  We do not disagree with this statement, and it lends further support to our finding that, in this case, the permissive inference created by the challenged language contained in the instructions was not unconstitutional because the called for inference was rational.  *See also, Hall,* 830 A.2d at 245 (quoting language from *Commonwealth v. Sattazahn*, 413 A.2d 597, 606-07 n.6 (Pa. Super. Ct. 1993)).

The jury, of course, also had the benefit of hearing the entirety of the trial court's instructions, and there is nothing in the remainder of those instructions to suggest that there was a reasonable likelihood that the jury applied the challenged language in a way that violates the Due Process Clause. In fact, among other things, the trial court instructed the jury on the following: (1) the mandatory presumption of innocence; (2) the burden of proof remaining on the Commonwealth; (3) the definition of reasonable doubt; (4) the difference between direct and circumstantial evidence; and (5) the elements of first-degree murder. *See Doc.* 12-4.  As well, immediately preceding the challenged language, the trial court instructed the jury that the Commonwealth must establish the element of specific intent or else a "not guilty" verdict should be reached on first-degree murder. *See id.* at 37-39.  Furthermore, in evaluating the evidence, the trial court instructed the jury that it was to examine Hosby's words, conduct, and the

surrounding circumstances.  *Id.* at 39.  Most damaging to Hosby's ground for relief is that the trial court also instructed the jury that they *did not* have to find an inference of intent based upon Hosby's possession of a firearm without a license, and that the evidence of his possession of a firearm without a license is not enough proof.  *Id.* at 41, 42 (emphasis added).[8]

Accordingly, in short, both the isolated language and the jury instructions, as a whole, did not amount to a violation of the Due Process Clause.  Therefore, any objection raised by Hosby's trial counsel would have been meritless.  As a result, Hosby would not be able to succeed on the prejudice prong of the *Strickland* test, or, for that matter, the deficiency prong.  Thus, Hosby cannot overcome the procedural default on the sole ground contained in his petition, because the ground is not a substantial one.[9]

---

[8]      Hosby's argument that the repetition of the isolated language amounted to a mandatory presumption is similarly without merit.  At no point did the language used by the trial court change, and, viewed in isolation or as a whole, the language amounted to nothing more than a permissive inference; an inference that was not in violation of due process.

[9]      To the extent that our analysis reflects a ruling on the merits, rather than a proper disposition under the *Martinez* regime, we would stand on our findings and recommendations that Hosby's sole ground be denied.

## IV. <u>Recommendation</u>.

For the foregoing reasons, **WE RECOMMENDED** that Hosby's habeas corpus petition (*Doc.* 1) be **DENIED**.  The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this <u>**27**</u><sup>th</sup> day of <u>**February 2015**</u>.

<u>***S/Susan E. Schwab***</u>
Susan E. Schwab
United States Magistrate Judge
